**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KATHLEEN JOHNSON, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ROBERT JOHNSON,<br><br>　　　Plaintiff,<br><br>vs.<br><br>PHILIP MORRIS USA INC., CUMBERLAND FARMS, INC., and CUMBERLAND FARMS OF MASSACHUSETTS, INC.,<br><br>　　　Defendants. | )<br>)<br>)　No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF REMOVAL BY DEFENDANT PHILIP MORRIS USA INC.

On May 23, 2025 Plaintiff commenced this lawsuit in the Superior Court of Suffolk County, Massachusetts, by filing a Complaint and Request for Bench Trial captioned *Johnson v. R.J. Reynolds Tobacco Company*, bearing Civil Action Number 2584CV01410.[1] Under 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Philip Morris USA Inc. respectfully gives notice of the removal of this action to the United States District Court for the District of Massachusetts, and provides the following grounds for removal.

### PRELIMINARY STATEMENT

1.　　Plaintiff Kathleen Johnson filed suit in Massachusetts state court on May 23, 2025, alleging that her late husband, Decedent Robert Johnson, died of lung cancer caused by smoking cigarettes manufactured by Philip Morris that he bought from Cumberland Farms stores in Massachusetts. *See generally* Compl.

---

[1]　Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders filed in the state court action are attached as **Exhibit 1**.

2.    Plaintiff brought only one claim: violation of the Massachusetts Consumer Protection Act, G. L. c. 93A.  *See id.*

3.    Plaintiff sued five defendants: three cigarette manufacturers who are not citizens of Massachusetts and two retailers who are citizens of Massachusetts.  Compl. ¶¶ 13–18.

4.    Plaintiff, a Massachusetts citizen, is diverse in citizenship from Defendant Philip Morris, a Virginia citizen.  Plaintiff was also diverse in citizenship from the two other cigarette manufacturer defendants that she initially sued but then dismissed with prejudice, R.J. Reynolds Tobacco Company and Liggett Group LLC.  *See* **Exhibit 1**, Stipulation of Dismissal with Prejudice as to R.J. Reynolds Tobacco Co. (Jan. 29, 2026); Stipulation of Dismissal with Prejudice as to Liggett Group LLC (Nov. 20, 2025).

5.    Plaintiff sought to avoid removal by fraudulently joining the two retailer defendants, Cumberland Farms Inc. ("Cumberland Farms") and Cumberland Farms of Massachusetts, Inc. ("Cumberland Farms of MA"), who are Massachusetts citizens.  And Plaintiff subsequently engaged in bad faith to deprive Philip Morris of its ability to remove to Federal Court within the one-year limitation on removal.

6.    Specifically, neither Cumberland Farms or Cumberland Farms of MA could possibly be liable on Plaintiff's lone 93A claim unless (among other things) they sold cigarettes to Decedent after 1979—the earliest possible date that Chapter 93A may apply in a personal injury case such as this one.  *See Greene v. Philip Morris USA Inc.*, 208 N.E.3d 676, 687 & n.14 (Mass. 2023) (explaining that Chapter 93A did not apply to personal injury actions until it was amended in 1979, and thus a plaintiff-smoker is "required to show a causal link after 1979 between [the defendant]'s deception . . . and her cancer" (citing *Hershenow v. Enter. Rent-A-Car Co. of Boston, Inc.*, 840 N.E.2d 526, 533 (Mass. 2006))).

2

7. Cognizant of this linchpin, Plaintiff alleged in her Complaint that her husband "Robert Johnson regularly and frequently purchased Defendants RJR's and Philip Morris' cigarettes at various locations in the Commonwealth of Massachusetts, **including at Cumberland Farms and including after 1979**." **Exhibit 1**, Compl. ¶ 26 (emphasis added).

8. But **four days** after the one-year limitation on removal expired, Plaintiff disavowed that allegation at her deposition, testifying that her husband actually **stopped purchasing cigarettes from Cumberland Farms stores by 1972**. *See* **Exhibit 2**, Johnson Dep. at 354–57 (May 27, 2026).

9. Cumberland Farms's and Cumberland Farms of MA's joinder was fraudulent because with **no** sale of cigarettes by either of them to Decedent after 1979, there is "no reasonable possibility" that Plaintiff can prevail on her 93A claim against either of them. *See Universal Truck & Equip. Co. v. Southworth-Milton, Inc.*, 765 F.3d 103, 108 (1st Cir. 2014).

10. Plaintiff acted in bad faith to prevent removal by falsely alleging that her husband "regularly and frequently" bought cigarettes from Cumberland Farms "after 1979," and not disclosing—until four days after her case had been pending in state court for a year—that her husband actually made no cigarette purchases at Cumberland Farms after 1979. *See* 28 U.S.C. § 1446(c)(1).

11. This Court has diversity jurisdiction over this case because the only properly joined defendant, Philip Morris, is completely diverse from the plaintiff; Cumberland Farms and Cumberland Farms of MA were fraudulently joined; Plaintiff engaged in bad faith to prevent removal within a year of the commencement of this action in state court; and the amount in controversy exceeds $75,000.

## REMOVAL IS PROPER BASED ON DIVERSITY JURISDICTION

**I.    The Properly Joined Defendant Is Completely Diverse From Plaintiff.**

12.    Diversity jurisdiction exists "when there is complete diversity, that is, when no plaintiff is a citizen of the same state as any defendant." *Gabriel v. Preble*, 396 F.3d 10, 13 (1st Cir. 2005) (emphasis omitted). This means that if the "**properly joined**" defendant is diverse from the plaintiff, the Court has jurisdiction. *In re Fresenius Granuflo/Naturalyte Dialysate Prod. Liability Litig.*, 76 F. Supp. 3d 321, 326 (D. Mass. 2015) (emphasis added). That is the case here.

13.    Plaintiff alleges that she is a resident of the Commonwealth of Massachusetts. Compl. ¶ 11. She is, therefore, a citizen of Massachusetts for purposes of diversity jurisdiction. *See Hall v. Curran*, 599 F.3d 70, 72 (1st Cir. 2010) ("Under generally accepted principles, citizenship is determined by domicile, which can be established by demonstrating that the individual is physically present in the state and has an intent to remain indefinitely.").

14.    Philip Morris is a Virginia corporation with its principal place of business in Virginia. *See* **Exhibit 1**, Philip Morris's Answer to Compl. ¶ 16. Philip Morris is, therefore, a citizen of Virginia for purposes of diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business").

15.    Thus, Philip Morris—the only properly joined defendant—is completely diverse from Plaintiff.

**II.    Plaintiff Fraudulently Joined The Only Non-Diverse Defendants, Cumberland Farms And Cumberland Farms Of MA.**

16.    Cumberland Farms is a Delaware corporation with its principal place of business in Massachusetts. *See* **Exhibit 1**, Cumberland Farms's Answer to Compl. ¶ 18. Cumberland Farms of MA is a Massachusetts corporation with its principal place of business in Massachusetts.

4

*See* **Exhibit 1**, Cumberland Farms of MA's Answer to Compl. ¶ 18.   Thus, both retailers are citizens of Massachusetts.   However, because they were fraudulently joined, their citizenship is not an obstacle to removal.

17.     "A plaintiff may not impede a defendant's right of removal by fraudulently joining a non-diverse defendant who has no real connection to the case."  *Surabian Realty Co., Inc. v. CUNA Mut. Grp.*, 245 F. Supp. 3d 297, 299 (D. Mass. 2017) (citing *Universal Truck*, 765 F.3d at 108).   To establish fraudulent joinder, a defendant must show "either that there has been outright fraud committed in the plaintiff's pleadings," *Surabian Realty*, 245 F. Supp. 3d at 299, or that "there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted against the non-diverse defendant," *Universal Truck*, 765 F.3d at 108.

18.     When a defendant attempts to establish "outright fraud," it "bears the burden of demonstrating fraudulent joinder by clear and convincing evidence."   *In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, 111 F. Supp. 3d 79, 83 n.4 (D. Mass 2015).   But where the defendant relies on the "no reasonable possibility" prong, the burden "is that traditionally used to evaluate a motion to dismiss under Rule 12(b)(6)."   *In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, 111 F. Supp. 3d 79, 83 n.4 (D. Mass 2015).   In other words, this form of "[f]raudulent joinder exists when the complaint in effect at the time of removal states no claim against the non-diverse defendant." *Coughlin v. Nationwide Mut. Ins. Co.*, 776 F. Supp. 626, 628 (D. Mass 1991).   "In assessing a claim of fraudulent joinder, the court is not bound by the allegations in the complaint and may consider affidavits and other materials that bear on the question of whether there is a reasonable basis for joinder of a defendant." *In re Fresenius*

*Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, 76 F. Supp. 3d at 333; *see also Surabian Realty*, 245 F. Supp. 3d at 299 (same).

19.    "The linchpin of the fraudulent joinder analysis is whether the joinder of the non-diverse party has a reasonable basis in law and fact." *In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, 76 F. Supp. 3d at 332.

20.    There is no reasonable basis in law or fact for the joinder of Cumberland Farms or Cumberland Farms of MA because a threshold requirement for potential liability against either retailer is that they sold cigarettes to Decedent **after 1979**.  That's because pre-1979 sales are not actionable under Plaintiff's sole 93A claim.  *See Greene*, 208 N.E.3d 676, 687 & 14 (Mass. 2023) ("[b]ecause [a 93A] claim is limited to [the defendant]'s conduct after G. L. c. 93A's amendment in 1979," a plaintiff-smoker is "required to show a causal link **after 1979** between [the defendant]'s deception . . . and her cancer" (emphasis added)).  But as Plaintiff revealed for the first time at her deposition, her husband **stopped purchasing cigarettes from Cumberland Farms stores by 1972**.  *See* **Exhibit 2**, Johnson Dep. at 354–57 (May 27, 2026).  That is, neither Cumberland Farms nor Cumberland Farms of MA sold any cigarettes to Decedent after 1979.[2]  That means Plaintiff has "no reasonable possibility" of recovery against either retailer, and thus their joinder is fraudulent.  *See Universal Truck*, 765 F.3d at 108.

21.    Because both Cumberland Farms and Cumberland Farms of MA were fraudulently joined, their citizenship is disregarded for purposes of diversity jurisdiction.  *See Universal Truck*, 765 F.3d at 109 ("The doctrine of fraudulent joinder permits a federal court to 'disregard, for jurisdictional purposes' . . . the citizenship of non-diverse defendants" (citing *Mayes v. Rapoport*, 198 F.3d 456, 461 (4th Cir. 1999))).

---

[2]    In fact, Cumberland Farms of MA never sold cigarettes to Decedent because it has never sold cigarettes. *See* **Exhibit 3**, Declaration of Secretary Laura Sherman ¶ 7.

**III.    Plaintiff Engaged In Bad Faith By Falsely Alleging That Her Husband "Regularly And Frequently Purchased" Cigarettes At Cumberland Farms "After 1979," Only To Reveal The Falsity Of Her Allegation Four Days After The One-Year Limitation On Removal Expired.**

22.    Where, as here, a year has passed since the commencement of the action, the action may still be removed based on diversity jurisdiction if "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).

23.    The bad faith exception to the one-year limitation on removal reaches "intentional conduct—action or inaction—to defeat removal." *In re Zofran (Ondansetron) Prods. Liab. Litig.*, No. 1:15-MD-2657-FDS, 2019 WL 2491587, at *4 (D. Mass. June 13, 2019).

24.    The exception applies where a plaintiff engages in "strategic gamesmanship to prevent a defendant's removal from state court." *Ehrenreich v. Black*, 994 F. Supp. 2d 284, 288 (E.D.N.Y. 2014).  It also applies where a plaintiff "turn[s] a blind eye to the facts," because a plaintiff may not do so and "then profit from his ignorance" by getting to remain in state court. *Hill v. Allianz Life Ins. Co. of N. Am.*, 51 F. Supp. 3d 1277, 1283 (M.D. Fla. 2014) (citing *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 571 F.3d 1143, 1146 n.6 (11th Cir. 2009)).  For example, in *Hill*, the plaintiff alleged an amount in controversy below the jurisdictional threshold, only to reveal a little over a year later—based on information that was in his control all along—that the amount in controversy exceeded $75,000. *Id.* at 1282–83.  The court rejected the plaintiff's attempt to attribute the discrepancy to a lack of awareness, recognizing that a party may not avoid removal by failing to investigate readily available facts and then benefit from it.  *Id.*

25.    Bad faith may be established through circumstantial evidence because a party's improper motive "must of necessity be ascertained from circumstantial evidence." *Forth v. Diversey Corp.*, No. 13-CV-808-A, 2013 WL 6096528, at *3 (W.D.N.Y. Nov. 20, 2013).

26.     The circumstances here establish bad faith.  Plaintiff filed her Complaint alleging that her husband "regularly and frequently purchased Defendants RJR's and Philip Morris' cigarettes . . . **including at Cumberland Farms and including after 1979**." Compl. ¶ 26.  Indeed, Plaintiff's Complaint references conduct occurring "after 1979" **seven times**, leaving no doubt as to Plaintiff's awareness that pre-1979 conduct cannot support her 93A claim.

27.     It wasn't until **four days** after the one-year limitation on removal expired that Plaintiff disclaimed her allegation, testifying under oath at her deposition that her husband stopped buying cigarettes at Cumberland Farms "by 1972." *See* **Exhibit 2**, Johnson Dep. at 354–57 (May 27, 2026).

28.     Plaintiff never amended her Complaint to remove the false allegation that her husband purchased cigarettes at Cumberland Farms "after 1979."  Quite the opposite.  In response to an interrogatory asking Plaintiff to identify "every location where the smoker purchased any and all cigarettes as alleged in the Complaint," Plaintiff identified "Cumberland Farms." **Exhibit 4**, Pl.'s Resp. to Def's. Standard Interrog. No. 19.  When Philip Morris followed up on deficiencies in Plaintiff's interrogatory responses, Plaintiff did not take the opportunity to reveal that her husband did not purchase cigarettes at Cumberland Farms after 1979 as she alleged in her Complaint.  Instead, her counsel affirmed that Plaintiff "has no supplements." **Exhibit 5**, Email from Plaintiff's Counsel to Defense Counsel (Apr. 6, 2026).

29.     Just as in *Hill* where the plaintiff made false allegations and kept them up until shortly after a year elapsed to fend off removal, Plaintiff here knew her husband did not purchase cigarettes at Cumberland Farms after 1979 but alleged that he did anyways.  And then she kept the ruse up until one year and four days after she filed her Complaint.

30.    Plus, Plaintiff did not litigate her 93A claim against Cumberland Farms. She sought no discovery from it or about it. This circumstantially indicates, if not dispositively establishes, bad faith. *E.g.*, *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1262 (D.N.M. 2014) ("[f]ailure to actively litigate against the removal spoiler"—such as "asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera"—"will be deemed bad faith").

31.    "Congress did not intend plaintiffs, through gimmicks and artful maneuvering used in connection with the one year bar to removal, to straightjacket or deprive nonresident defendants of their legitimate entitlements to removal." *Dyer v. Capital One Nat'l Ass'n*, No. 4:20-CV-4230, 2021 WL 3813367, at \*3 (S.D. Tex. Aug. 23, 2021) (quoting *Saunders v. Wire Rope Corp.*, 777 F. Supp. 1281, 1284 (E.D. Va. 1991)). Had Plaintiff's Complaint alleged the truth—that Plaintiff's husband stopped purchasing cigarettes at Cumberland Farms in 1972—Philip Morris would have removed this case within thirty days of being served. Had Plaintiff's counsel not doubled down on her false allegation, and instead disclosed the truth at any time before the one-year deadline for removal, Philip Morris would have removed the case within a year of it being filed. Instead, Plaintiff chose to make a false allegation and press it until a year and four days after she filed her Complaint, in an attempt to deprive Philip Morris of its right to remove the case.

32.    Simply put, there is no plausible reason to bring a 93A claim against a non-diverse retailer the Decedent did not purchase cigarettes from after 1979, other than to deprive Philip Morris of its legitimate entitlement to removal. Nor is there any plausible reason to falsely plead that the Decedent did purchase cigarettes from the retailer after 1979, or to conceal that he actually didn't until one year and four days after the commencement of the action, other than to defeat removal. *See Fahnestock & Co. Inc. v. Castelazo*, 741 F. Supp. 72, 77 (S.D.N.Y. 1990) (denying

9

motion to remand and imposing Rule 11 sanctions where "there was no basis under New York law for plaintiff's claims against" the non-diverse defendants, who "were joined solely to defeat diversity"); *see also cf. Caranchini v. Nationstar Mortg., LLC*, No. 4:17-CV-00775-DGK, 2021 WL 4005999, at *24 (W.D. Mo. Sept. 2, 2021) (imposing Rule 11 sanctions upon finding bad faith where counsel "knowingly and intentionally filed frivolous claims . . . solely to prevent removal" and pled facts that were "patently untrue") *rev'd on other grounds*, 97 F.4th 1099 (8th Cir. 2024).

33.    Because Plaintiff acted in bad faith, removal to this Court after the one-year deadline is proper.

**IV.    The Amount in Controversy Exceeds $75,000.**[3]

34.    A district court has diversity jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C.§ 1332(a). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens,* 574 U.S. 81, 89 (2014).

35.    Here, although the complaint itself does not allege a specific amount of damages, Plaintiff's 93A demand letter indicated that she seeks "$3 million." *See* **Exhibit 6**, Massachusetts General Laws Chapter 93A Notice of Demand (July 26, 2024). Based on Plaintiff's estimated damages in this case, the amount-in-controversy requirement is easily satisfied. *See Carrozza v. CVS Pharmacy, Inc.*, 992 F.3d 44, 52 (1st Cir. 2021) (finding the $650,000 in a demand letter incorporated by plaintiff into the pleadings sufficient to satisfy the amount in controversy where the demand was made in good faith and where it was plaintiff (as opposed to defendant) who later questioned his own assertion of damages).

---

[3]    Defendants do not agree that plaintiff is entitled to any damages, but Plaintiff's allegations and statements about damages are properly considered to establish diversity jurisdiction.

36.     In any event, this is apparent from the face of the complaint.  Plaintiff alleges that Defendants proximately caused Decedent's "lung cancer [and] great suffering."  Compl. ¶ 10. Plaintiff's request for damages includes Decedent's "pain and suffering" and "medical expenses." *See* Compl. at 25 (Prayer for Relief).  Plaintiff also seeks "an amount up to three times actual damages" and "all recoverable costs of this action and all legally recoverable interest," *id.*, which are considered when determining the amount in controversy, *see, e.g.*, *Harrison v. Granite Bay Care, Inc.*, 811 F.3d 36, 39 n.1 (1st Cir. 2016).

37.     These facts—especially in their totality—support a plausible inference that the amount in controversy exceeds $75,000.  *See*, *e.g.*, *Solimino v. Target Corp.*, 2021 WL 4822175 (D. Mass. Oct. 15, 2021) ("Where Plaintiff has claimed medical expenses and lost wages and compensation of $53,824.49 and Plaintiff seeks damages for pain and suffering and lost earning capacity, and may seek additional damages for medical treatment, the allegations in the complaint support a reasonable probability that the amount in controversy will exceed $75,000, satisfying 28 U.S.C. § 1332(b).").

### PHILIP MORRIS HAS FOLLOWED THE PROCEDURE FOR REMOVAL

38.     Pursuant to 28 U.S.C. 1446(b)(3), Philip Morris filed this Notice within thirty days of its receipt of a copy of Plaintiff's deposition transcript.

39.     Pursuant to Local Rule 81.1, Philip Morris will file in this Court certified or attested copies of all records and proceedings in the state court action, as well as a certified or attested copy of all docket entries therein, within 28 days of the filing of this Notice of Removal.  *See* D. Mass. L.R. 81.1(a) ("Within 28 days after filing a notice for removal of an action from a state court to this court pursuant to 28 U.S.C. § 1446, the party filing the notice shall file certified or attested copies of all records and proceedings in the state court and a certified or attested copy of all docket entries in the state court.").

40.    Suffolk County, Massachusetts, is located within the District of Massachusetts. Therefore, removal to this Court satisfies the venue requirements of 28 U.S.C. § 1446(a).

41.    Because Plaintiff fraudulently joined Cumberland Farms and Cumberland Farms of MA, their consent to removal is not required. *See, e.g.*, *Egan, Flanagan & Cohen, P.C. v. Twin City Fire Ins. Co.*, 570 F. Supp. 3d 12, 15 (D. Mass. 2021) ("Timely consent to removal is not required . . . if the non-consenting party was fraudulently joined.").

42.    The written notice required by 28 U.S.C. § 1446(d) will be promptly filed in the Superior Court of Suffolk County, Massachusetts, and will be promptly served on Plaintiff. *See* 28 U.S.C. § 1446(d) ("Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.").

43.    Philip Morris does not waive any defenses and expressly reserves its right to raise any and all defenses in subsequent proceedings, including but not limited to any and all defenses under Rule 12 of the Federal Rules of Civil Procedure.

44.    Philip Morris reserves the right to amend or supplement this Notice of Removal.

45.    If any other question arises about the propriety of the removal, Philip Morris requests the opportunity to file a brief and present oral argument in support of removal.

## CONCLUSION

This action has been properly removed to this Court.

12

June 18, 2026                          Respectfully Submitted:

                                       SHOOK HARDY & BACON, LLP

                                       By:
                                       */s/ Scott A. Chesin*
                                       Scott A. Chesin (BBO# 653907)
                                       1 Rockefeller Plaza, Suite 2801
                                       New York, NY 10020
                                       Tel.: (212) 989-8844
                                       schesin@shb.com
                                       SHBMass@shb.com

                                       *Counsel for Philip Morris USA Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Scott A. Chesin, hereby certify that on June 18, 2026 a true copy of the above document

was served by email upon:

Walter Kelley
Colleen Ryf, Esq.
Bernheim Kelley Battista, LLC
4 Court Street, Suite 305
Plymouth, MA 02360
wkelley@realjustice.com
cryf@realjustice.com

***Attorney for Plaintiff***

  /s/  *Scott A. Chesin*        
Scott A. Chesin
